OPINION
Debra M. Zweber appeals pro se from the trial court's denial of her request for declaratory and injunctive relief regarding her right to be placed on the May 7, 2002, primary ballot as a Libertarian Party candidate. In its April 1, 2002, ruling, the trial court held that the Montgomery County Board of Elections and the Ohio Secretary of State, the appellees herein, were not required to recognize the Libertarian Party as an existing political party in Ohio or to place Zweber's name on the upcoming primary ballot as a Libertarian Party candidate for the office of Montgomery County Commissioner. On appeal, Zweber argues that the Libertarian Party is a viable political party under Ohio law. As a result, she insists that the appellees are obligated to recognize the Libertarian Party and to place her name on the primary ballot as a candidate of that party.
The parties agree that resolution of Zweber's appeal requires an interpretation of Ohio election law, specifically R.C. 3501.01(F) and R.C. 3517.01(A), in light of stipulated facts. In her four assignments of error, Zweber argues that the trial court misinterpreted these two statutes and, as a result, erred in denying her request for declaratory and injunctive relief.[1] As a means of analysis, we first will set forth the stipulated facts upon which the trial court based its decision. We then will address the operation of R.C. 3501.01(F) and R.C.3517.01(A) in the context of the stipulated facts.
 I. Stipulated Facts
The Libertarian Party qualified as a political party on November 8, 1999, having filed on that date with the Ohio Secretary of State at least the requisite number of signatures required to become a newly formed political party under Ohio law. Many people filed declarations of candidacy throughout the state for nomination to various federal and state offices in the March 7, 2000, primary election as candidates of the Libertarian Party and were so designated on the ballot. The Libertarian Party also ran joint candidates for president and vice president in the general election on November 7, 2000. Those candidates received 13,475 votes, which is 0.3% of the total votes cast at that election. This election occurred less than twelve months after the qualification of the Libertarian Party as a newly formed political party under Ohio law.
On February 5, 2002, the Secretary of State sent all County Boards of Elections Directive 2002-02, reminding them that the Democrat and Republican Parties are the only two parties recognized in Ohio at this time. The Directive further stated that: "No declaration of candidacy or nominating petition should be certified by board members as a valid petition if it seeks to nominate a person as a candidate of a political party that is not recognized in Ohio."
Zweber filed her Declaration of Candidacy and Petition for the nomination of the Libertarian Party for Montgomery County Commissioner with the Montgomery County Board of Elections on February 11, 2002. On February 27, 2002, the Montgomery County Board of Elections decided not to certify Zweber's Declaration of Candidacy and Petition for the nomination of the Libertarian Party for Montgomery County Commissioner. This decision was based solely on the finding of the Montgomery County Board of Elections, in concurrence with Secretary of State Directive 2002-02, that the Libertarian Party is not a recognized political party in Ohio at this time. The Montgomery County Board of Elections indicated that the petition otherwise would have been certified.
 II. Analysis
As noted above, resolution of Zweber's appeal requires us to interpret R.C. 3501.01(F) and R.C. 3517.01(A) in the context of the foregoing stipulated facts. Section 3501.01(F) provides that the phrase "political party" means "any group of voters meeting the requirements set forth in section 3517.01 of the Revised Code for the formation and existence of a political party."[2] With one exception that will be discussed infra, it then divides "political parties" into three categories, depending upon the votes a party's candidate received in the last election for president or governor. Specifically, R.C. 3501.01(F) reads as follows:
 (1) "Major political party" means any political party organized under the laws of this state whose candidate for governor or nominees for presidential electors received no less than twenty per cent of the total vote cast for such office at the most recent regular state election.
 (2) "Intermediate political party" means any political party organized under the laws of this state whose candidate for governor or nominees for presidential electors received less than twenty per cent but not less than ten per cent of the total vote cast for such office at the most recent regular state election.
 (3) "Minor political party" means any political party organized under the laws of this state whose candidate for governor or nominees for presidential electors received less than ten per cent but not less than five per cent of the total vote cast for such office at the most recent regular state election or which has filed with the secretary of state, subsequent to any election in which it received less than five per cent of such vote, a petition signed by qualified electors equal in number to at least one per cent of the total vote cast for such office in the last preceding regular state election, except that a newly formed political party shall be known as a minor political party until the time of the first election for governor or president which occurs not less than twelve months subsequent to the formation of such party, after which election the status of such party shall be determined by the vote for the office of governor or president.
R.C. 3501.01(F)(1), (2) and (3) (emphasis added).
The other relevant portion of Ohio election law, R.C. 3517.01(A), sets forth the requirements for formation and continuation as a political party. It provides as follows:
 (A) A political party within the meaning of Title XXXV [35] of the Revised Code is any group of voters that, at the most recent regular state election, polled for its candidate for governor in the state or nominees for presidential electors at least five per cent of the entire vote cast for that office or that filed with the secretary of state, subsequent to any election in which it received less than five per cent of that vote, a petition signed by qualified electors equal in number to at least one per cent of the total vote for governor or nominees for presidential electors at the most recent election, declaring their intention of organizing a political party, the name of which shall be stated in the declaration, and of participating in the succeeding primary election, held in even-numbered years, that occurs more than one hundred twenty days after the date of filing. . . . If any political party fails to cast five per cent of the total vote cast at an election for the office of governor or president, it shall cease to be a political party.
R.C. 3517.01(A) (emphasis added).
The parties' stipulated facts indicate that the Libertarian Party became a recognized political party in Ohio on November 8, 1999, under the second method set forth in R.C. 3517.01(A). On that date, a group of voters made the requisite filing with the Secretary of State. Thereafter, Libertarian Party candidates participated in both the March 7, 2000, primary election and the November 7, 2000, general election, which occurred just less than twelve months after the Libertarian Party's formation in Ohio. Although the Libertarian Party garnered only 0.3% of the votes cast in the November 7, 2000, general election, Zweber argues that it remains in existence today as a "minor political party." In support, she relies on the last sentence of R.C. 3501.01(F)(3), which, as noted above, provides "that a newly formed political party shall be known as a minor political party until the time of the first election for governor or president which occurs not less than twelve months subsequent to the formation of such party, after which election the status of such party shall be determined by the vote for the office of governor or president." Because the November 7, 2000, general election did occur less than twelve months subsequent to the formation of the Libertarian Party, Zweber insists that the party remains viable, notwithstanding R.C.3517.01(A), which states that "[i]f any political party fails to cast five per cent of the total vote cast at an election for the office of governor or president, it shall cease to be a political party." Not surprisingly, the appellees rely on section 3517.01(A) to argue that the Libertarian Party ceased to exist on November 7, 2000, when it did fail
to cast five per cent of the total vote in the general election held that day.
 Upon review, we find Zweber's argument to be unpersuasive, and we agree with the trial court's and the appellees' interpretation of the foregoing statutes. A well-recognized principle of statutory construction requires us to construe two seemingly conflicting statutes, when possible, to give effect to both. See, e.g., Gahanna-Jefferson Local School Dist. Bd. of Educ. v. Zaino (2001), 93 Ohio St.3d 231, 234. We note too that "[a]ll statutes pertaining to the same general subject matter must be read in pari materia." Hughes v. Ohio Bur. of Motor Vehicles
(1997), 79 Ohio St.3d 305, 308. In accordance with these principles, the trial court properly construed R.C. 3501.01(F) and R.C. 3517.01(A) in the only way that avoids an irreconcilable conflict and gives effect to both provisions as written.
As noted above, R.C. 3501.01(F) provides that the phrase "political party" means "any group of voters meeting the requirements set forth in section 3517.01 of the Revised Code for the formation and existence of a political party." In turn, R.C. 3517.01(A) provides that a viable political party comes into existence upon the requisite filing with the Secretary of State. Notably, R.C. 3517.01(A) also provides that a political party "shall cease to be a political party" if it fails to receive five per cent of the total vote cast at an election for the office of governor or president. In our view, the Libertarian Party came into existence on November 8, 1999, when it made the requisite filing, and it ceased to be a political party on November 7, 2000, when it failed to receive five per cent of the vote in the general election held that day. This conclusion is consistent with the plain language of R.C.3517.01(A).
The foregoing conclusion also is easily reconcilable with the portion of R.C. 3501.01(F) upon which Zweber relies. As an initial matter, we note that section 3501.01(F) itself explicitly references the requirements for the formation and existence of a political party found in R.C. 3517.01(A). It then categorizes existing political parties based on the per cent of the total vote their candidates received at the most recent general election. If a party's candidate received at least twenty per cent of the vote at such election, then it is a "major political party." If a party's candidate received at least ten per cent but less than twenty per cent of the total vote at such election, then it is an "intermediate political party." If a party's candidate received at least five per cent but less than ten per cent of the total vote at such election, then it is a "minor political party." R.C. 3501.01(F)(1), (2) and (3).
The portion of section 3501.01(F) upon which Zweber relies merely provides an exception to the foregoing categorization of political parties. It provides that "a newly formed political party shall be known as a minor political party until the time of the first election for governor or president which occurs not less than twelve months subsequent to the formation of such party, after which election the status of such party shall be determined by the vote for the office of governor or president." Under this exception, the Libertarian Party would have remained a "minor political party" after the November 7, 2000, general election even if it had garnered one-hundred per cent of the vote that day. This is so because the November 7, 2000, general election occurred slightly less than twelve months subsequent to the formation of the Libertarian Party. In other words, under the exception cited by Zweber, a newly formed party cannot elevate itself to an "intermediate political party" or to a "major political party" until it performs sufficiently well in a general election held at least twelve months after its formation.
If the Libertarian Party had received at least five per cent of the total vote on November 7, 2000, it certainly would have remained a viable political party under R.C. 3517.01(A). It did not do so, however. As a result, under section 3517.01(A) it ceased to be a political party on that day. Construing the language of R.C. 3501.01(F) upon which Zweber relies to produce a contrary result would require section 3501.01(F) to "trump" section 3517.01(A), and it would bring the two statutes, as written, into irreconcilable conflict. We decline to adopt such a reading of Ohio election law, particularly when the two statutes may be reconciled in a way that gives effect to the plain language of both.[3]
In short, the trial court properly concluded that section 3501.01(F)(3) "does not extend the life of a political party which has been extinguished by § 3517.01(A)." Accordingly, the trial court properly denied Zweber's request for declaratory and injunctive relief regarding her right to be placed on the upcoming primary ballot as a Libertarian Party candidate. In light of this conclusion, we need not address the parties' alternative arguments regarding the doctrines of laches and estoppel.
 III. Conclusion
Based on the reasoning and citation of authority set forth above, we hereby OVERRULE Zweber's assignments of error and AFFIRM the judgment of the Montgomery County Court of Common Pleas.
WOLFF, PJ., BROGAN, J. and FAIN, J. concur.
[1] In her first assignment of error, Zweber contends that "[t]he trial court erred in holding that Ohio Revised Code § 3501.01(F) only classifies political parties into categories." In her second assignment of error, Zweber argues that "[t]he trial court erred in holding that Ohio Revised Code § 3517.01(A) is the exclusive statute for the determination of the formation and existence of a political party." In her third assignment of error, Zweber claims "[t]he trial court erred in denying the request for declaratory judgment." In her final assignment of error, she contends "[t]he trial court erred in denying the request for injunctive relief." See Appellant's Brief at 5.
[2] We will discuss these requirements infra in our analysis of R.C.3517.01.
[3] In her appellate brief, Zweber suggests that our interpretation of R.C. 3501.01(F) and R.C. 3517.01(A) unlawfully infringes on the First Amendment rights of individuals who wish to form a political party. She cites absolutely no legal authority, however, to support the proposition that our reading of the two statutes violates the Constitution.